UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 10-106-JBC

JOHN E. KINLEY,                                                                          PLAINTIFF,

V.                          MEMORANDUM OPINION & ORDER

UNITED PARCEL SERVICE, ET AL.,                                              DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the motion for summary judgment by the defendant, United Parcel Service, Inc., R.42.  For the reasons stated below, the court will grant the motion.

On May 6, 2009, John E. Kinley was terminated from his position as a full-time courier at United Parcel Service Inc., which he had held since 1992, allegedly for dishonesty.  Kinley asserted claims against both UPS and Teamsters, including alleged race discrimination under Title VII of the Civil Rights Act of 1964, as amended, certified at 42 U.S.C. section 2000-e *et seq.*; Chapter 344 of the Kentucky Civil Rights Act; and 42 U.S.C. § 1981.  Kinley alleges discriminatory discharge, disparate treatment, hostile work environment, and retaliation.  UPS moves for summary judgment as to all of these claims.  The court has dismissed all claims against Teamsters.

Discrimination and retaliation claims brought under § 1981 "are governed by the same burden-shifting standards as the claims under Title VII," and are analyzed

1

under the same legal framework. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001). The Kentucky Civil Rights Act "is similar to Title VII . . . and should be interpreted consistently with federal law." *Ammerman v. Brd. of Educ. of Nicholas Co.*, 30 S.W.3d 793, 797-98 (Ky. 2000). The court's analysis of Kinley's claims under Title VII of the 1964 Civil Rights Act will thus apply to the claims brought under 42 U.S.C. § 1981 and KRS Chapter 344.

First, summary judgment will be granted in favor of UPS on Kinley's discriminatory discharge claim because "[i]n order to establish employment discrimination, [a plaintiff] must present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Anthony v. BTR Auto. Sealing Sys.*, 339 F.3d 506, 514 (6th Cir. 2003) (citations omitted). Kinley has presented neither. Kinley admits that he cannot show direct evidence of discrimination, R.46, p.36, and the record is devoid of any evidence showing "explicitly expressed" racial motivation for Kinley's discharge. *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). Kinley has also failed to present circumstantial evidence showing each of the required elements for a prima facie case of Title VII racial discrimination: "1) [that] he was a member of a protected class; 2) [that] he suffered an adverse employment action; 3) [that] he was qualified for the position; and 4) [that] he was replaced by someone outside the protected class or that he was treated differently than similarly situated non-protected employees. *Newman v. Fed. Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001).

2

UPS does not dispute the first three elements but does dispute the fourth – whether Kinley was replaced by a non-protected employee or treated differently than a similarly situated, non-protected employee. Even though Kinley's position was awarded to a Caucasian, non-protected employee, he was not replaced by UPS because the replacement employee was chosen by operation of a collective bargaining agreement. "Ordinarily, a replacement selected pursuant to a collective bargaining agreement does not give rise to an inference of discrimination." *MacDonald v. UPS*, 403 Fed. Appx. 453, 459 (6th Cir. 2011). Kinley says that he was replaced by a non-protected employee even though two African-American employees could have bid on his position. The record, however, shows that Kinley's route was awarded pursuant to the collective bargaining agreement to Shane Peck, one of only two employees, both Caucasian, who bid on the position. Kinley even states that his discharge "was not for the purpose of replacing Kinley with an unprotected employee." R.46, p.37.

Kinley has also failed to show that he was treated differently than similarly situated, non-protected employees. UPS contends that Kinley was fired for dishonesty for committing the following acts: working 3.05 hours over-allowed (*i.e.*, working more time than UPS planned for the day) on May 5, 2009; alleging on his timecard that he was on break when he actually picked up packages; reporting 19 minutes of inactivity on his timecard; and working a second job at a bank during UPS hours. Kinley disputes the contention that he was working at a bank during UPS hours, but he admits that he committed the other three actions on

3

May 5, 2009.  The parties argue over whether UPS has admissible evidence that shows Kinley working at the bank during UPS hours, whether an employee's break is considered UPS time, and whether Kinley worked at the bank after a September 2008 pronouncement by UPS that employees were not permitted to work second jobs in UPS uniforms or trucks.  Deferring to the plaintiff's version of the story and removing from the analysis the allegation that Kinley worked a second job during UPS hours, Grubbs is still not similarly situated to Kinley because Kinley does not allege that Grubbs had a period of inactivity on his timecard or that he was at least 3 hours over-allowed on his timecard.

Kinley compares himself to Dennis Grubbs, a Caucasian driver for UPS. Kinley states that Grubbs conducted personal business while on his breaks and traveled over one mile off trace (*i.e.*, making deliveries out of sequence) in violation of company policy but was not reprimanded for his actions; allegedly, Grubbs rode his bike to his home, which was over two miles from the UPS center, in the evenings during times designated as breaks.  Kinley also alleges that Grubbs's timecard did not accurately reflect a break he took on May 6, 2006.  Even taking all of these assertions as true, Grubbs is not a similarly situated, non-protected employee who was treated differently than Kinley.

The conduct of Grubbs is distinguishable from the conduct for which Kinley was discharged. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). The "similarly situated" standard requires that the comparable and the plaintiff "must have dealt with the same supervisor, have been subject to the same standards and

4

have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*  Kinley admits that his timecard had 19 minutes of inactivity written on it as well as 3.05 hours of over-allowed time when he was terminated; this distinguishes his conduct from the Grubbs conduct, which does not include either inactivity or over-allowed time.  Even if Kinley's allegations against Grubbs are true – that Grubbs inaccurately reported breaks on his timecard and conducted personal business during break time – Grubbs is not similarly situated to Kinley because they did not engage in the same conduct.

Kinley has failed to produce sufficient evidence that the non-minority UPS employee with whom he compares his treatment was "similarly situated . . . in all relevant respects," *Ercegovich v. Goodyear Tire and Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); therefore, Kinley has not established a prima facie case of racial discrimination.  Without circumstantial or direct evidence of racial discrimination, no genuine dispute as to any material fact remains as to the discriminatory discharge claim, and summary judgment is appropriate.

Second, summary judgment will also be granted to UPS for Kinley's disparate treatment claim because Kinley has not demonstrated that UPS treated him less favorably than others because of his race. *See Dunlap v. TVA*, 519 F.3d 626, 630 (6th Cir. 2008).  To prove a case of unlawful employment discrimination under the theory of disparate treatment, Kinley must first establish the four elements of a prima facie case of racial discrimination: "1) [that] he was a member

of a protected class; 2) [that] he suffered an adverse employment action; 3) [that] he was qualified for the position; and 4) [that] he was replaced by someone outside the protected class or that he was treated differently than similarly situated non-protected employees. *Newman*, 266 F.3d at 406 (6th Cir. 2001).[1] The first and third elements are not disputed, but Kinley has failed to produce evidence showing both that he suffered an adverse employment action besides the discharge and that a similarly situated, non-protected employee was treated differently for the same conduct committed by Kinley.

The five-year statute of limitations from KRS Chapter 344, the longest statute of limitations relevant to this action, time-bars any of the acts cited by Kinley that occurred before March 10, 2005, because the complaint was filed on March 10, 2010; the statute begins to run on the dates of the alleged acts. *Ammerman v. Brd. of Educ. of Nicholas County*, 30 S.W.3d 793, 798 (Ky. 2000). Particularly, the incident from March 29, 2004, when Kinley was "written up" for involvement in an "avoidable" automobile accident, is time-barred. Even though other avoidable-accident write-ups may have occurred after March 10, 2005, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *AMTRAK v. Morgan,* 536 U.S. 101, 122 (2002).

Kinley alleges disparate treatment by UPS in five ways, aside from his

---

[1] Some courts use a two-prong analysis for determining whether a plaintiff has established a prima facie case of disparate treatment, *see Hollins v. Atlantic Co.,* 188 F.3d 652 (6th Cir. 1999). But following the example of *Clay v. UPS*, 501 F.3d 695 (6th Cir. 2007), the court will apply the four-prong construct used by the parties to analyze whether Kinley has established a prima facie case of racial discrimination for his disparate treatment claim.

6

discharge. First, he claims that he was monitored more closely than employees outside his protected class. Second, he alleges that a supervisor, Shari Greenleaf, initiated an altercation with him in 2007. Third, he states that he was disciplined more than other employees during the period of 1994 until his discharge. Fourth, he claims that his truck was loaded for delivery differently than other employees' trucks. Fifth, he alleges that he was disciplined for "avoidable accidents" more frequently than unprotected employees. Despite these allegations, Kinley provides no examples of adverse employment actions, besides the discharge, and no similarly situated, non-protected employees who were treated differently for the same conduct committed by Kinley.

    Kinley compares himself to two employees for the purpose of his disparate treatment claim. The first comparable is Scott Sagracy, a Caucasion, non-protected employee. Kinley states that UPS conducted OJS (*i.e.*, on-job supervision) rides with both Kinley and Sagracy to review the employees' over-allowed hours; despite both employees finishing their OJS rides an hour and a half over the allowed time, only Sagracy allegedly received performance documentation and a time study conducted on his route from UPS after his ride. Additionally, Kinley's OJS ride was 2 days longer than Sagracy's ride. Even though Sagracy could be considered a similarly situated, non-protected employee who was treated differently than Kinley for the same or similar conduct, Kinley nonetheless has failed to establish a prima facie case of racial discrimination in regard to this alleged disparate treatment. None of these actions by UPS constitutes an adverse

7

employment action.

An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002)(internal citations omitted). Examples include a "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Ford v. GMC,* 305 F.3d 545, 553 (6th Cir. 2002) (citation omitted). A "mere inconvenience" or "alteration of job responsibilities" does not amount to a material adverse change. *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 886 (6th Cir. 1996)(citation omitted). Based upon this standard, the alleged disparate treatment – an additional two days of the OJS ride, failure to provide documentation of the OJS ride, and failure to conduct a time study on Kinley's route – does not constitute a material adverse change in the terms or conditions of employment; Kinley experienced no material loss of benefits, significantly diminished responsibilities from the conduct, or the equivalent of such actions.

Dennis Grubbs is the second comparable. Kinley alleges that Grubbs was permitted by management to go home on his break, over a mile away from the UPS center, to conduct personal business in the company vehicle while in uniform but was never punished for these actions. Grubbs also allegedly inaccurately posted breaks on his timecard without repercussion. Kinley, on the other hand, was

ultimately discharged for alleged similar acts. As analyzed under the theory of discriminatory discharge, Kinley has failed to establish a prima facie case of racial discrimination for these alleged acts leading up to the discharge because Grubbs is not a similarly situated, non-protected employee who was treated differently for the same conduct. *See supra* pp.4-6.

Kinley provides other examples of alleged disparate treatment by UPS that relate to the discharge. For instance, several UPS drivers admitted to taking time during their work days to re-adjust the loads in their trucks when the trucks were not loaded properly. Kinley purportedly explained to UPS that the 19 minutes of inactivity reported on his timecard was time spent re-loading his truck, but this information was never provided to the panel which reviewed his grievance. Kinley also was "written up" for work violations but not informed about them until after his discharge, and Kinley was reprimanded for breaking trace (*i.e.*, delivering out of sequence) to deliver a heavy package at the beginning of his route. As these alleged acts by UPS relate to Kinley's discharge, they do not establish a prima facie case of racial discrimination for his disparate treatment claim; the court has found that Kinley has not established a prima facie case of racial discrimination for UPS's termination of Kinley because he has provided no similarly situated, non-protected employee who was treated differently. *See supra* pp.4-6.

Other allegations of disparate treatment are that Kinley received more warnings for failure to follow instructions than other employees, that Kinley was monitored more closely than other employees, and that Kinley was the subject of

disparate treatment by a UPS supervisor Sharri Greenleaf when she allegedly grabbed his shirt during a verbal argument in 2007.  None of these incidents constitute adverse employment actions under the standard set forth above because they are not materially adverse changes to the terms or conditions of Kinley's employment; additionally, Kinley has offered no specific comparables — similarly situated, non-protected employees — by which to measure UPS's actions.

Third, summary judgment is also appropriate as to the hostile work environment and retaliatory discharge claims because Kinley has presented no evidence in support of these claims.  Kinley failed to respond to UPS's arguments that Kinley had not established a prima facie case for either of the claims. By failing to respond specifically to those claims, Kinley has conceded UPS's arguments or abandoned his claims of hostile work environment and retaliatory discharge; summary judgment is thus appropriate. *Knittel v. First Fin. Mortgage Corp.*, 2009 U.S. Dist. LEXIS 55363, at *7-8 (E.D. Ky. June 17, 2009)(citations omitted).

Accordingly,

**IT IS ORDERED** that UPS's motion for summary judgment, R.42, is **GRANTED**.

**IT IS FURTHER ORDERED** that the pretrial conference and the jury trial are **CANCELED**.

Signed on May 16, 2012

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY